UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                            Case No. 03-CR-52

MALKIT (MIKE) SINGH,

    Defendant.

## ORDER DENYING MOTION FOR SENTENCE REDUCTION

In 2005, Defendant Malkit (Mike) Singh was found guilty by a jury of two counts of kidnapping and one count of conspiracy to commit kidnapping, which led to the death of Waheed Akhtar, a Manitowoc area businessman. He was sentenced to 420 months (35 years) and has a projected release date of February 8, 2033. The case is currently before me on Singh's third motion seeking a sentence reduction or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

As amended under the First Step Act of 2018, § 3582(c)(1)(A) authorizes the Court to reduce a term of imprisonment after considering the factors set forth in § 3553(a) to the extent they are applicable, if the court finds that "extraordinary and compelling circumstances warrant such a reduction" and that "such reduction is consistent with applicable policy statements issued by the sentencing commission." *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Texas June 17, 2019).

Singh's first motion was filed on September 12, 2019, before the public health emergency caused by the coronavirus and the spread of COVID-19 throughout the country. It was primarily based on Singh's good behavior while in prison, hardship to his family in India, and various health

conditions, including h-pylori, thyroid, high cholesterol, and hypertension. The Court denied Singh's first motion in January of 2020, finding that his medical conditions, as well as his family's hardship, did not rise to the level of "extraordinary and compelling" reasons required to justify his request. Singh filed an appeal, which was dismissed as untimely.

Singh then filed an emergency motion for compassionate release on April 22, 2020, after the COVID-19 pandemic broke out. Dkt. No. 407. A hearing was held in response to a letter from Attorney Anderson Gansner from Federal Defender Services. After a lengthy period during which the parties were attempting to attain Singh's medical records, Attorney Craig Albee of Federal Defender Services filed a motion to withdraw and refile the motion. Counsel for Singh noted that, in an abundance of caution, Singh would file a request for release with the warden, which he did on May 12, 2021. The warden denied that request on May 18, 2021. A new motion was filed on July 16, 2021, and the government and probation have again responded. Having considered the entire record in this matter, the Court concludes that Singh's motion should again be denied.

Singh is currently 46 years old. In his memorandum in support of his most recent motion Singh argues for a sentence reduction on the ground that his sentence was excessive, both due to a guideline mistake and because of his decision to go to trial; that he has undergone extraordinary rehabilitation while incarcerated; and that his current health conditions, including hypertension, heart disease, and obesity, subject him to a substantial risk of serious illness or death due to COVID-19. The bulk of Singh's argument is devoted to his claim that his sentence is excessive, as opposed to the risk his incarceration poses to his physical safety and well-being. He argues that the current version of § 3582(a)(1)(c)(A)(i) affords the court broad discretion to determine what constitutes the "extraordinary and compelling" reasons needed to justify a sentence reduction after the time to appeal or seek postconviction relief has elapsed.

2

Singh's interpretation of the statute is not without support. In *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), the Seventh Circuit vacated the district court's denial of a motion for reduction under § 3582(c)(1)(A)(i) of a sentence imposed in a drug case. The district court had concluded that it lacked the authority to reduce the sentence under § 3582 because such a reduction would be inconsistent with the policy statement issued by the Sentencing Commission. The policy statement of the United States Sentencing Commission limited the reasons for sentence reductions under § 3582 to the inmate's medical condition, age, family circumstances and a catch-all for other reasons deemed appropriate by the Bureau of Prisons. *See* U.S.S.G. § 1B1.13. Noting that the Sentencing Commission had not updated its policy statement to conform to the changes brought about by the First Step Act (because it lacked the quorum needed to do so), the court concluded that there was no applicable policy statement of the Sentencing Commission currently in existence. *Id.* at 1180 (citing *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020). As a result, the discretion of the district court to grant relief under that section was not so limited. Almost every other circuit that has considered the issue has reached the same conclusion. *United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022).

This does not mean that the district court's discretion to grant a sentence reduction under § 3582(c)(1)(A)(i) is unbounded, however. The absence of an applicable policy statement does not create "a sort of Wild West in court, with every district judge having an idiosyncratic release policy." *Gunn*, 980 F.3d at 1180. "[O]nly 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)," and while the Sentencing Commission's analysis in § 1B1.13 and its Application Notes is not conclusive, it does provide some guidance. *Id.*

3

Turning first to the medical reasons cited in support of the request for a reduction, Singh states in his motion that he suffers from hypertension, heart disease, and obesity. Defense counsel solicited the opinion of Dr. Barbara Benjamin, MD, who opines that his medical conditions place him at an extremely high risk of serious illness if infected with Covid-19. That letter indicates that "Singh therefore may have several coronary vessels with blockages that put him at high risk for any physiologic stress." Dkt. No. 431-1 at 1. She advises that Dr. Baptist, a cardiologist, agreed that the test results were of concern and additional tests had not been performed or a formal diagnosis completed. *Id*. at 1–2.

Probation's response, Dkt. No. 439, refers the Court to its previously filed memorandum, Dkt. No. 420, which opines that Singh's February 2021 testing should dispel Dr. Benjamin's concerns that Singh has a heart condition that makes him more susceptible to serious injury or death from COVID. Probation's May 20, 2021 memorandum states:

> In February 2021, Mr. Singh was subject to a battery of labs and tests, to include an echocardiogram and Myoview stress test performed by an outside medical provider. The results of those tests showed Mr. Singh to have "normal heart function" and a "low probability of significant coronary insufficiency." Additionally, his reported chest pain was assessed as "probably related to gastroesophageal reflux disease." By March 2021, the defendant reported the night time discomfort had increased to the point it was waking him four to five times per night, for which his prescription for omeprazole was renewed and he was encouraged to avoid consuming spicy foods, chocolate, peppermint, or caffeine before bed.

Dkt. No. 420 at 2. In addition, March 10, 2021 follow-up medical records attached to the Government's response report that "(p)er cardiology, inmate has normal heart function based on stress test and echo" and the chest pain was listed as "GERD." Dkt. No. 438 at 6.

Singh is serving his sentence at FCI Fairton, located in New Jersey. He tested negative for the virus on June 29, 2020, and records indicate that he refused an influenza vaccination in October 2020. *Id*. at 3. However, the Government notes that Singh received two-doses of Covid-19 Pfizer

4

vaccination on June 24, 2021 and July 16, 2021, respectively. Dkt. No. 436 at 1. This fact, alone, casts serious doubt on Singh's claim that there exist extraordinary and compelling reasons to order his immediate release. To be sure, for most of the past two years, COVID-19 has been a scourge in prisons, where social distancing and other protective measures are difficult. This is no longer the case, however. Today, "vaccines provide a much better defense against infection than any judicial order could do." *United States v. Ugbah*, 4 F. 4th 595, 597 (7th Cir. July 21, 2021) (citing *United States v. Broadfield*, 5 F.4th 801, (7th Cir. July 21, 2021). Prisoners who have access to a vaccine generally cannot use the risk of COVID-19 to obtain compassionate release. *Id.*

FCI Fairton houses approximately 880 inmates. Over the past year, the Bureau of Prisons (BOP) has undertaken extraordinary steps to control the spread of the virus, including testing, quarantine, vaccination of staff and inmates, monitoring of the current state of the pandemic, and adjusting visitation regulations as needed. It appears that FCI Fairton is at Level III procedures, which includes modified in person visitation. In addition, inmates with adverse reactions are provided appropriate medical care by the institution. There are currently zero active cases of Covid-19 among FCI Fairton inmates and three active cases among staff members. *See* https://www.bop. gov/coronavirus. (Last visited 5/11/2022.)

In light of these facts, Singh has failed to demonstrate the kind of extraordinary and compelling reasons previously thought needed to justify release under § 3582(c)(1)(A). He has failed to offer convincing evidence that he has any health condition that would render him unusually susceptible to serious illness or death should he contract COVID-19, especially in light of the medical care he is receiving in prison and the fact that he has received the Covid-19 vaccine.

As for his argument that his sentence is excessive, the Court concludes that granting a reduction at this time would be inconsistent with the sentencing factors set forth in § 3553(a)(1).

5

Singh recruited his friend Ekabal Busara to travel with him from Atlantic City, New Jersey to Francis Creek, Wisconsin to kidnap Waheed Akhtar, who Singh claimed owed him some $200,000 over a business dispute. A summary of the events giving rise to Singh's conviction is set forth in the Court of Appeals' decision in *United States v. Malkit "Mike" Singh and Ekebal "Paul" Busara*, 483 F.3d 489 (7th Cir. 2007). Singh's crime consisted of a double kidnapping which led to the death of Waheed Akhtar, a husband and father, and assault and emotional trauma to Akhtar's nephew. Singh has failed to show that the guideline sentence imposed by the Court was excessive given the nature and seriousness of his crimes. He has not demonstrated the "extraordinary and compelling" reasons needed to justify a reduction of his sentence.

For all of the foregoing reasons, the request for a sentence reduction/compassionate release is denied.

**SO ORDERED** at Green Bay, Wisconsin this 13th day of May, 2022.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court
